## SPECIFICATIONS FOR PUBLIC CONTRACTS.

Superior Court of Cincinnati.

FISCHER AUTO & SERVICE COMPANY v. THE CITY OF CINCINNATI ET AL.

Decided, August 24, 1914.

*Municipal Corporations—Specifications Upon Which Bids Are Asked— Must Permit of Competition in a Practical Way—Purchase of an Automobile Enjoined—Where Specifications Made Impracticable Bids from More than One Company.*

1. The provisions contained in Sections 3811, 4328 and 4371, relating to specifications for and the letting of public contracts by municipalities require that the specifications upon which bids are invited shall permit of general compensation in the practical and commercial sense.

2. The carrying out of a contract for the purchase of an automobile for municipal use will be enjoined where the specifications are so drawn as to prevent compliance therewith except by one concern, unless compliance is attained by the purchase and assembling of automobile parts from different factories and the production in that manner of an unknown machine at a cost possibly prohibitive.

*Bettinger, Schmitt & Kreis,* for plaintiff.
*Saul Zielonka,* Assistant City Solicitor, contra.

MERRELL, J.

In this action the plaintiff, as tax-payer, seeks to enjoin the director of public service of the city of Cincinnati from carrying out a certain contract made by the city with the Welbon Motor Car Company for the purchase of an automobile, and to enjoin the city auditor from issuing a voucher, and the city treasurer from honoring such voucher in payment for said automobile.

The plaintiff alleges and the defendants admit that the city solicitor was requested in writing to bring this action and refused so to do.

The contract is attacked on the ground that the specifications for the automobile, intended for the use of the chief of police, contemplated an expenditure of more than $500, but were so framed as to prevent competitive bidding; that the specifications were identical with those contained in the catalogue of the Hudson Motor Car Company, and that no make of car other than the Hudson could comply in all respects with said specifications.

It is also alleged that three bids were received, one from the Welbon Company for a Hudson car, one from the Leyman-Buick Company, handling the Buick car, for a machine of that make, and one from the plaintiff company, local dealers, for the Chalmers car.

It is further claimed that the bidders other than plaintiff are controlled through stock ownership by the same persons, and that the bid of the Leyman-Buick Company was for the purpose of giving the appearance of competition, although in truth the Buick car could not compete with the specifications.

The specifications are in evidence, a few of the many details being as follows: motor, 6 cylinder, 40 H. P., water cooled; cylinders, $3\frac{1}{2}$ x 5; wheel base, 123 to 130 inches; clutch, multiple disc; weight, not to exceed 3000 pounds.

The testimony dealt largely with the specifications of numerous makes of automobiles which are purchaseable in this country, of a type that might be considered as in any degree approximating the specifications of the city.

It was made to appear beyond any doubt that no known make of automobile, except the Hudson, came within the city requirements. Measured by the city specifications, every other machine was disqualified by reason of overweight, or of having a cone clutch, or a wheel base less than 123 inches, or cylinders of a different dimension from that specified, or by a similar departure in some radical particular from the specifications.

The situation thus disclosed was not, and doubtless could not be, seriously denied by counsel for defendants, in whose behalf the position was taken, first, that automobiles of numerous makes could be changed in some one or more particulars in order to

meet the city's specifications; and, second, that all of the parts specified being purchasable on the open market, any one familiar with automobile construction could "assemble" a machine to meet these specifications.

In view of the uncontradicted evidence in the case, neither of the contentions is of compelling force. Upon the evidence the conclusion is not to be avoided, that in practically every case of a make of automobile suggested as a possible competitor under these specifications, the changes required would be such that, if mechanically possible, they would be commercially impracticable. That is to say, the changes required would necessitate an expense which would practically prohibit competition, or if made, would produce an unbalanced and amorphous machine which would be unworthy of serious consideration.

On the other hand, the theory that these specifications open the way to competition by automobiles produced by assembling parts, is one that will doubtless appeal more to minds technically inclined, than to those versed in mechanics and in the automobile industry. Judges, even when not aided by evidence, can not remain oblivious to knowledge which is widely current outside the court room.

Upon the evidence presented, and possibly in the absence of part of such evidence, it is sufficiently clear that competition in the commercial and practical sense would not be and could not be produced under the specifications here in question, by offers to assemble automobile parts so as to bring forth hitherto unknown and unnamed machines conforming to the specifications of the city of Cincinnati. Particularly is this so when under those specifications it is sought to purchase but a single automobile.

There was indeed testimony, the truth of which need not be questioned, that it is possible to purchase upon the open market the several parts of a machine and to assemble these parts into an entire car. There was no testimony, however, to the effect that the process last described could be so pursued that a single machine so constructed to meet the specifications in this

instance, could also meet the competition of a machine of like specifications built in large numbers by a highly organized and specially equipped plant engaged in this business alone.

Manifestly the answer to the theory of possible competition by assembled cars, is that the city of Cincinnati, by asking for bids in this instance, sought to purchase an automobile, and not merely an aggregation of automobile parts.

It is, however, contended that actual competition was shown in this case by the presentation of an offer by the Leyman-Buick Company to furnish a Buick car "in accordance with the specifications." This bid, however, is accompanied by printed descriptions of the Buick machine, apparently as part of the bid itself. These printed descriptions disclose that the machine, obviously that offered for acceptance, does not conform, in important particulars, to the city's specifications. It was not competent, therefore, for the director of public safety to accept the Buick offer, which consequently fails entirely to establish competition in fact.

For the reasons last stated, it becomes unnecessary to consider in detail the plaintiff's allegation that the companies offering respectively the Hudson and the Buick cars were subject to a common control through stock ownership.

It was, however, established that the same persons were large stockholders in both companies and that both corporations had the same president. If on other grounds this case was a close one, the circumstances disclosed would compel the closest scrutiny.

For the same reason, I omit any extended reference to the manner in which the specifications were prepared. It appeared that the draftsman had before him the city's former automobile specifications, under which a Peerless car was purchased about a year ago, and if, if I correctly recall his testimony, the catalogue of the Hudson and Buick concerns. The evidence on this score is not regarded as of controlling significance.

Two cases in Ohio were chiefly relied on by counsel for the City:

*State, ex rel Dolle,* v. *Miller,* 10 C.C.(N.S), 406: In this case it was sought to enjoin the letting of a contract for a street improvement with wood block, for the reason that the specifications therefor provided that the wood block should be treated with pure coal tar creosote. It was claimed by the relator in that case that the preservative was a substance patented and controlled by a single company. Upon the evidence the circuit court found that the use of the preservative specified was not covered by patent right and that the same was obtainable on the open market. Upon the finding of facts in that case, the decision of the court logically followed, and an injunction was refused. The case, however, is not analogous to the case at bar, for the reason that in the latter there is no denial that the several parts of an automobile are purchasable on the open market in a form to comply with the specifications. The gist of the present complaint is that no automobile, *as a complete and integral structure,* can be offered for competition under these specifications other than the car of the successful bidder. A further distinction that may be pointed out is that in the wood block case the specifications call for a commodity which ordinarily is, and in that instance obviously was expected to be, manufactured for the particular occasion. In the present case, the court can not lose sight of the fact, made apparent at the trial, that a single automobile is not in the trade manufactured to comply with a peculiar and isolated specification. An analysis of the facts in the wood block case and in the present case suggests again the vital distinction between competition only theoretically possible as distinguished from real competition in the practical and commercial sense.

*McCourt* v. *Akron,* 13 N.P.(N.S.), 537: In this case, again, the letting of a contract for a public improvement was sought to be enjoined, for the reason that the board of control secretly, so it was charged, determined in advance of receiving bids that they would use lock bar steel pipe, which it is further alleged was exclusively manufactured and controlled by one concern. From the report of the case it would appear that the specifica-

tions did not call for this particular type of pipe, nor did the advertisement for bids. It is plain, therefore, that intending bidders were not limited in their offers of pipe to a kind closely controlled by patent or exclusive manufacture. The court, therefore, properly held that it would not control the honest discretion of public officials having the award of this contract. That the authority of this case hardly extends to the facts of the present case may be gathered from what is said by the court at page 543:

"Many of the allegations of the petition fall to the ground when, as the evidence shows, the bid of the successful bidder was not for steel riveted pipe, but was 'for furnishing and laying 36 inch steel pipe one-fourth inch thick.' The advertisement for bids was for steel pipe delivered and laid complete."

In *Holbrook* v. *Toledo,* 8 N.P.(N.S.), 31, following *Hastings* v. *Columbus,* 42 O. S., 585, it was held that competitive bidding is not necessarily narrowed by admission to competition of material which is monopolized by reason of patents.

That these decisions, doubtless well considered, were not in accord with the legislative intent underlying the statutory provisions requiring competitive bidding, may be inferred from the passage of the act which is now contained in Section 3811 of the General Code, as follows:

"No municipal corporation shall adopt plans or specifications for a public improvement required by law to be made by contract let after competitive bidding, which requires the exclusive use of a patented article or process, protected by a trademark, or an article or process wholly controlled by any person, firm or corporation or combination thereof."

While it may be doubted if the term "public improvement" is sufficiently broad to cover the purchase by a municipality of an automobile, yet the statute quoted may be taken in the light of an expression of the public policy of the state, and therefore argumentatively applicable in the construction of Code, Section 4328, in part as follows:

"When an expenditure within the department, other than the compensation of persons employed therein, · exceeds five hundred dollars, such expenditures shall first be authorized and directed by council. When so authorized and directed, the director of public service (and, by Section 4371, the director of public safety) shall make a written contract with the lowest and best bidder, after advertisement for not less than two or more than four consecutive weeks in a newspaper of general circulation within the city."

In the present case the true test is whether the statute last quoted is satisfied, if specifications upon which bids are invited permit theoretical competition merely, or if the possibility of general competition in a· commercial sense is a *sine qua non* in the letting of public contracts.

The latter construction must be adopted if the statute law of this state governing public contracts is to be more than a dead letter. Subjected to this test, the specifications here in question, although open in form, are in truth closed to all except those who have a single make of automobile to offer.

Upon the evidence presented, I am unable to find in these specifications a genuine compliance with that municipal law which opens all public contracts of a certain kind and amount to competition, with a view to securing to the public that which is at once the cheapest and the best.

In *Tucker* v. *City of Newark*, 19 C. C., 1, it was held that specifications for a street improvement which called for the use of brick of a particular manufacture, did not permit of competition within the spirit and meaning of the statute.

A case which was not cited in argument, but the authority of which is extremely persuasive when applied to the facts in the case at bar, is that of *Grace* v. *Fobes, Mayor*, 118 N. Y. S., 1062. Syl. 2 is as follows:

"Where specifications for a central office fire alarm system were so drawn as to confine all possibility of bidding to one company, though there was at least one other engaged in the same business, there was an utter failure to comply with laws · 1909, c. 55, Sec. 120, requiring an opportunity for competition

in bidding on municipal contracts, and a contract let to such company is void.''

The specifications in that case went into a wealth of detail, providing, for example, a detachable box 15 inches high and 2¾ inches wide, and glass tubes 2½ inches in outside diameter and ⅛ inch thick, a gong board 4 inches wide by 5 feet 4 inches high, not less than ⅛ inch thick, and a dome over some part of the instrument of highly finished composition bronze of Moorish design, and the like.

It will be noticed from these occasional excerpts made from the specifications that almost any manufacturing company could construct apparatus to comply with the particulars specified. It is true that other items of the specifications were found to be patented articles, and therefore within the inhibition of the New York statute prohibiting the specification of patented articles; but the substantial defect found in the specifications was that, by accident or intention, they conformed almost exactly to the description of apparatus manufactured by one particular company. At page 1065 the court says:

''It is claimed by the defendants that the specifications do not intend to require and do not require that the precise instruments therein described shall be supplied; that other instruments or appliances having equivalent functions and producing the same results could be furnished; and that when furnished the contract would be complied with. In my opinion the specifications are not open to such a liberal construction. The only bids to be considered are such as cover all apparatus, material and work 'called for under these specifications.'

\*     \*     \*     \*     \*     \*     \*     \*

''If I am right in my construction of the specifications, if in fact they limit the opportunity for bidding to the Gamewell Company, they fail utterly to comply with the statute. The statute requires an opportunity for competition; and where this opportunity is given in form only and not in fact, its spirit is violated. The statutes which require public works to be let by contract and to the lowest bidder are enacted in the public interests. They are a bar against fraud and they should receive from the courts the most liberal and fair interpretation.''

Although not pertinent in this immediate connection, it may serve a purpose to further quote from the decision last mentioned, at page 1068:

"It is also said that this action is not brought in good faith; that the person really interested is a competitor of the Gamewell Company. If so, it is immaterial. The plaintiff is in fact a tax-payer. If in this action he shows illegal action on the part of the city, he is entitled to the assistance of the court, although he may have been induced to bring it by some private grievance."

There remains to be considered the contention made on behalf of defendant's counsel that this court should not, by a process of injunction directed against the carrying out of this contract, attempt to control the discretion of the director of public safety. The argument in this behalf is based upon a total misconception. The defect in the process of awarding this contract is that under the specifications as drawn the director of public safety, in awarding the contract, had no discretion whatsoever. One make of automobile and one only could conform to the specifications, with the result that the advertisement for bids was simply an idle ceremony. The possible fact that, upon new and broader specifications, admitting bids for various makes of cars of the same general class, the director of public safety may, in the exercise of a genuine discretion, select the car which was successful in the present letting, is not a reason for refusing the relief now prayed for.

In reaching the conclusions indicated by what has already been said, it has been necessary to reason from the evidence taken as an entirety. Manifestly it is impossible to state wherein every item of the city's specifications is at fault in preventing open competition. All the more it is impossible to state in detail what changes in the specifications would serve to admit free competition. However, the distinction between open and closed specifications is readily to be inferred from the opinion in the New York case last cited. For want of a more accurate designation, it may be said that specifications are open which admit

to competition commodities of the general class, purpose, description and degree of efficiency of the thing desired to be contracted fications are closed when the commodity for which bids are for; and specifications are closed when the commodity for which bids are invited is required to conform in its minutest details to that exclusively controlled by a single person or corporation. This, at least, would appear to be so where the commodity in question is obtainable in a wide market in forms varying greatly in detail, but all conforming to the essential characteristics of a class.

The construction placed by this court upon the specifications here in question, in the light of the evidence presented, is in accord with the conclusions of the author of *McQuillin on Municipal Corporations,* Section 1203, in part as follows:

"A law demanding competition in the letting of public work is intended unquestionably to secure unrestricted competition among bidders, and hence, where the effect of an ordinance is to prevent or restrict competition and thus increase the cost of the work, it violates manifestly such law and is void, as are all proceedings had thereunder."

What is thus declared to be true of an ordinance applies obviously to specifications, and it is unimportant whether in fact the provisions of an ordinance or specification increase the cost of the work, if in truth they have a tendency so to do, by limiting the possibility of securing the award to a single individual or corporation.

The same text-writer, in Section 1204, says:

"As already stated, one of the exceptions to the rule requiring competitive bidding exists where the subject-matter of the contract is a monopoly, as in the case of a contract for lighting, where there is only one light company in the municipality. On the other hand, a different proposition presents itself where there are several manufacturers who produce a certain article or where the material can be secured from two or more different localities. In such a case it is held in nearly all the decisions that bidding can not be restricted by requiring bids on an unpatented article manufactured by a particular firm, or material

obtained from a particular locality. In other words, where speci-
fications are so drawn as to confine the bidding to one company,
firm or individual, although others are engaged in the same busi-
ness and can do the work or supply the materials, a contract
let thereunder is void.''

A decree may be drawn as prayed for, enjoining the several
defendants.